EkeehaN, J.,
delivered the opinion of the court.
This bill is filed to set aside, as constituting a cloud upon complainant’s title, a sale of land made under the decree of the County Court of Shelby County in 1858. It appears that the complainant is the only surviving heir of her father, Edward O’Conner, who died in Shelby County in 1855, leaving also another child, a daughter named Margaret, who has since died intestate and unmarried. James O’Conner was appointed as the administrator of the estate, who, on the 28th of February, 1857, filed a petition for the sale of the lots in controversy, for the . payment of the debts of his intestate, and for money advanced by him in discharging what are claimed to have been liabilities of the estate.
It is now insisted that this sale was void for several reasons, some of which we proceed to notice. •
First, it is insisted that the two minor children, one being the present complainant, were not parties to the proceeding, and that the decree, therefore, was not binding force upon them.
It appears from the petition that it was filed by James O’Conner, administrator, and Jane and Margaret O’Conner, appearing by their next friend, James O’Conner.
Does this make the minors parties to the proceeding?
In the case of Elrod v. Lancaster, 2 Head, 574, it was held that an executor against whom a bill had •been filed involving an account of his executorship, *438 ought not to have been appointed guardian ad litem for the minors; and the court said that such an appointment was against all the rules of propriety; that their interests and his were directly in conflict, and that the substance of it was, that he assumed to act for them against himself. The court in this case held that the minors were not bound by the decree, saying: “We cannot permit a decree, made, under such circumstances, to compromit the rights of infants.”
This, too, was an attack upon the decree where it came before the court collaterally, and not on appeal or writ of error.
In the case of Frazier and Tullos, Ex’rs, v. Pankey, 1 Swan, 75, the statement of the bill was, that it was filed by themselves as personal representatives as well as on behalf of the widow and minor children, naming them. This was a bill filed for the sale of real estate in a ease of insolvency, under the act of 1837-8, requiring the heirs of the deceased to be made parties. This was held not to make them parties; and while the court say, in so holding, that the bill does, not purport to make them parties, and that the personal representatives alone speak, and say they act on behalf of the heirs, yet we think that the language and plain meaning of the bill were, that the personal representatives brought the suit for themselves and also, on behalf of the minors, just as a minor in ordinary oases brings his suit' by another as his next friend.. We can see no sound distinction between that case and this, where the suit is by James O’Conner as-administrator, and Jane and Margaret O’Conner, who- *439 appear by their next friend, James O’Conner. In both cases, so far as the minors were concerned, it was but the personal representatives claiming to act for them. In the language of the court in the case of Elrod v. Lancaster, “ their interest and his were directly in conflict, and the substance of it was, that he assumed to act for them against himself;” and we cannot permit a decree made under such circumstances to compromit the rights of infants.
The facts appear on the face of the proceeding, and show that the infants were not parties thereto. They are, therefore, not bound by the decree.
We confine this opinion to the precise case as made in the record before us.
The next question presented in the case, and the one on which the Chancellor rendered his decree against the complainant, is, that after her majority the sale was ratified by the complainant by receiving the proceeds of it remaining in his hands. The facts on this point, as proved by the deposition of the complainant taken on her own behalf, are as follow: She says she first learned the facts, as to the settlement of her father’s estate through her counsel, Mr. Hanson, a year, or perhaps a little more, before the date of her deposition, — January 21, 1871, — say about January 1, 1870. She had a settlement with her guardian of his accounts as such after her majority. She says that negotiations for a settlement commenced about two weeks after she arrived at age (which was in November, 1869), and ended, the settlement being made sometime afterward, to use her own language. *440 And as there seems to have been considerable difference between her and her guardian on the subject, we think it pretty clear that she had the counsel of her attorney, and had learned all about the condition of her father’s estate, before she received the money from her guardian. We conclude this to have been the case: — that with the facts all before her, and her interests looked after by her attorney, she, guided by his advice, received the proceeds of the land, and in addition, received one thousand dollars, which she says was for rents collected during the war. She says that she received this one thousand dollars, and released the guardian from all liability upon his restoration to her of her property which he was in possession of. The guardian seems to have resided in St. Louis, and she swears she had no property in the city of Memphis except the lots in controversy, which had been sold years before, arid were held by the purchasers or those. claiming under them, and had only some other unimproved property in Moscow, a village some distance from Memphis.
Now from all this, in connection with other facts shown by her, we infer that she claimed to hold her guardian to a strict accountability for his guardianship, and that he paid her the one thousand dollars in consideration that she should accept what had been done for her during her minority, — this sum being about the surplus arising from the sales after payment of debts; and that this was done by her in ratification of his acts in reference to her property.
In fact, as far as we can gather from the scanty *441 statement of facts made by her, she, as well as her sister up to the death of the latter, must have been supported and educated by her guardian for the seven or eight years that she lived in St. Louis; and in this settlement she has received the amount of funds originally in his hands, or more, — this, no doubt, being conceded to satisfy her, and to prevent her interfering with the sale he had procured to be made. We can come to no other conclusion from the testimony. We think it a case of express ratification of an act done without legal authority in her name, — a ratification for a sufficient consideration, equivalent, to a new contract, which she ought not to be aided in repudiating. She ought not, under these circumstances, to keep the money, thus obtained and at the same time assert a claim to the land.
We therefore affirm the Chancellor’s decree, with costs.